# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE MARTINEZ, | : |
|     **Plaintiff** | :    Civil No. 3:13-CV-1475 |
| v. | : |
| | :    (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA, et al., | : |
|     **Defendant** | : |

## MEMEORANDUM OPINION

### I.   Statement of Facts and of the Case

In this case the plaintiff, Andre Martinez, a federal prisoner, brings a negligence action against the United States, alleging that prison officials negligently handcuffed him causing an injury to his right pinky finger following a violent affray between Martinez and a fellow prisoner on March 7, 2012. On November 18, 2015, this matter was referred to the undersigned upon the consent of all parties for trial on December 7, 2015. Having conducted this trial, and provided all parties a full and fair opportunity to present evidence relating to this negligence claim, for the reasons set forth below, the court enters judgment in favor of the defendant.

The plaintiff, Andre Martinez, is a federal prisoner. In March of 2012 Martinez was housed in the Special Management Unit of the United States Penitentiary, Lewisburg, a maximum security federal prison. At that time, prison officials afforded inmates like Martinez with regular exercise opportunities in outdoor recreation areas.

These recreation areas are fully enclosed areas which may only be entered through a locked sally port, and it was the practice of prison officials to place several inmates in each enclosed recreation area at the same time for the purpose of obtaining exercise.

According to Martinez, on the morning of March 7, 2012, he was "enthusiastically" proceeding under staff escort to the recreation area to which he had been assigned when he observed that another inmate, Steward Pepion, and a third unidentified prisoner had already been placed inside this recreation enclosure. Martinez had an antagonistic relationship with inmate Pepion, an antagonism that was fueled by Martinez's belief that Pepion had made false statements about Martinez in the past.

On March 7, 2012, that antagonism exploded into violence. What followed is best depicted by a prison surveillance video, Exhibit 5, which captured this incident in its entirety. That video revealed that Martinez entered the recreation enclosure through the sally port at approximately 7:42:38 a.m. on March 7, 2012. Within a second of entering the sally port and confronting Pepion, at 7:42:39 a.m., Martinez and Pepion engaged in a vigorous, violent mutual assault, with both inmate striking each other dozens of times on the head, face, neck and torso with their closed fists, while also kicking one another.

This mutual affray, while furious, was brief. Staff responded to this episode of inmate-on-inmate violence effectively and with dispatch. Thus, within fifteen seconds of the outbreak of this violence, by 7:42:50 a.m., staff can be seen gathered outside the

recreation enclosure, ordering the inmates to cease their assault. When Martinez and Pepion failed to respond to these directions and continued to strike one another, within 30 seconds of the onset of this brawl, by 7:43:06 a.m., correctional staff can be seen using chemical agents to try to quell this disturbance. Those chemical agents quickly curtailed the combative instincts of Martinez and Pepion, who ceased fighting and complied with staff instructions to lie down on the ground in the recreation area by 7:43:23 a.m., some 44 seconds after this fight began.

The video then depicted the aftermath of this fight, as each inmate was instructed, in turn, to exit the recreation yard through the sally port. Martinez was the first inmate to depart the recreation yard. Upon entering the sally port, Martinez was handcuffed by staff, and taken for an immediate medical assessment. The video depicted, and the evidence reflected, that prison officials used a prescribed standard procedure when removing Martinez from the recreation area and transporting him for treatment. As part of that procedure, once Martinez was within the sally port, he was required to back up to the exit door, place his hands behind his back with the back of his hands touching one another and his thumbs facing upward. Martinez then placed his hands through a slot in the sally port door, and prison staff placed handcuffs over Martinez's wrists. Locking those handcuffs in place staff then opened the sally port door and escorted Martinez to the prison's medical unit.

The video of this episode appeared to reveal that the handcuffing of Martinez in this fashion took place without incident, and none of the correctional witnesses who participated in this event recalled anything unusual about the handcuffing of Martinez following this brawl. Those correctional witnesses, who collectively have applied handcuffs to inmates in this fashion on thousands of occasions, also testified without exception that they have never observed an inmate suffer a broken pinky finger through the application of handcuffs. Further, the protocol used by prison staff to apply handcuffs to inmates would make such an injury highly unlikely, since this process calls for the application of handcuffs over an inmate's wrists while his hands are behind his back with his thumbs facing upward. With the inmate's hands positioned in this fashion, the principal point of contact between the inmate's wrists and the handcuffs would occur on the wrists adjacent to the thumbs, and remote from the inmate's pinky fingers.

Furthermore, the correctional officers at the scene uniformly testified that Martinez made no complaint to them that their handcuffing had caused an injury to his right pinky finger. Yet, while these correctional witnesses all testified that they observed no evidence of injury to the plaintiff as a result of his handcuffing they also testified without exception that inmate affrays like the brawl between Martinez and Pepion frequently result in finger injuries to the inmate combatants as a result of violent, forcible blows they exchange.

Once he was handcuffed, Martinez was immediately taken to been seen and assessed by prison medical staff. That medical assessment revealed that Martinez had suffered a number of contusions, abrasions and lacerations, injuries which were all directly caused by his brawl with inmate Pepion. In addition to these injuries, Martinez complained that his right pinky finger hurt. In the medical notes that were made contemporaneously with this examination, medical personnel did not note that Martinez attributed this injury to his handcuffing, as he now claims. An examination of Martinez's right pinky finger, however, revealed a fracture between the first and second knuckles on this finger. Dr. Pigos, the prison's clinical director, testified that this injury is commonly referred to as a "boxer's fracture" and results from a person striking another with a closed first, precisely the conduct depicted in the video which captured the confrontation between Martinez and Pepion. In fact, all of the medical staff witnesses stated that an injury of this nature is typically a consequence of an inmate fight. None of the medical witnesses had ever observed such an injury caused by the act of handcuffing a prisoner.

Having diagnosed this fracture, medical staff attempted to splint the injury to promote healing. When follow-up medical appointments revealed that Martinez's injury was not healing as expected, Martinez was then provided an orthopedic surgical consult, as well as treatment by a plastic surgeon. Despite this medical care, Martinez suffered some on-going loss of dexterity and mobility in his right pinky finger.

It is against this factual background, a factual background largely defined by the immutable evidence of the prison video, that Martinez brings this claim that he was injured due to negligent handcuffing by correctional staff. Arrayed against the video evidence, and the consistent testimony of multiple witnesses who attributed Martinez's injury to his volitional act of striking a fellow prisoner, the only evidence presented in support of this negligence claim at trial came from the testimony of Martinez himself. This testimony, though, had a halting, equivocal and unpersuasive quality to it. In fact, at trial Martinez's negligence claim rested upon the thinnest of factual reeds. Martinez testified that, as he placed his hands behind his back and through the sally port slot, with his thumbs facing upward, he felt pain in his right pinky as a correctional officer's hand came into contact with that finger during handcuffing. Martinez then attributed his injuries exclusively to this handcuffing, discounting the violent brawl, and multiple punches, which he had engaged in moments before being handcuffed.

Setting aside the implausibility of Martinez being able to observe any action taking place behind his back while he was being handcuffed, Martinez's testimony simply described the sensation he experienced upon handcuffing, but did not provide persuasive proof regarding the causation of this injury. Thus, while incidental contact by correctional staff with Martinez's broken finger at the time of his handcuffing may have been painful, that sensation experienced by Martinez within minutes of forcibly

striking an inmate with his clenched right fist on numerous occasions did not mean that the injury was caused by the handcuffing, as Martinez now alleges.

**II.     Discussion**

This is a negligence action brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq*, which governs all claims against the United States "for money damages for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," id. at § 2674, and the "'extent of the United States' liability under the FTCA is generally determined by reference to state law.'" In re Orthopedic Bone Screw Product Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)).

Thus, a federal district court, in considering an FTCA action, must apply the law of the state in which the alleged tortious conduct occurred. See 28 U.S.C. § 1346(b)(1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). Construing this case under settled Pennsylvania tort law, in order to establish a cause of action for negligence, a plaintiff must prove the following elements by a preponderance of the evidence: (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's

resulting injury; and (4) actual damages suffered by the plaintiff. <u>Pittsburgh Nat'l Bank v. Perr</u>, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

    In this case upon a careful review of the evidence presented at trial we conclude that Martinez has failed to carry his burden of proof on three of the four elements of a negligence claim under Pennsylvania law. While we concede that prison officials have a duty to exercise an appropriate degree of care in the movement of inmates, <u>see</u> <u>Fitzmaurice v. United States</u>, No. 1:10-CV-2262, 2013 WL 4781709, at *1 (M.D. Pa. Sept. 5, 2013), we find that Martinez has shown no breach of this duty on behalf of the United States. Quite the contrary, when Martinez and a fellow inmate launched into a sudden and violent confrontation, prison staff responded with alacrity, using chemical munitions to quell this brawl within one minute, and then promptly removing Martinez and his cohorts from the recreation yard, and securing immediate medical attention for Martinez and his fellow inmate combatant. Thus, Martinez has failed to prove a breach of any duty owed to the plaintiff. <u>Pittsburgh Nat'l Bank v. Perr</u>, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

    Likewise, the evidence fails to show any causal connection between the conduct of prison staff and the plaintiff's resulting injury. Quite the contrary, the evidence shows in a clear and convincing fashion that the cause of Martinez's injury, a boxer's fracture to his right pinky finger, was Martinez's volitional act of indulging in an affray with a fellow inmate. Indeed, the causal theory posited by Martinez–that his boxer's

fracture resulted, not from boxing but from the application of handcuffs after his boxing–is unsupported by any competent evidence; is contradicted by the immutable evidence depicted in the prison videos; is inconsistent with Martinez's contemporaneous complaints, which did not mention handcuffing as the cause of his injury; is contradicted by with the experience of every correctional and medical witness, who uniformly testified that injuries like those suffered by Martinez are consistently the result of inmate fighting and not the application of handcuffs; and is wildly implausible given the description of the handcuffing process employed at the prison. This process calls for the application of handcuffs over an inmate's wrists while his hands are behind his back with his thumbs facing upward. With the inmate's hands positioned in this fashion, the principal point of contact between the inmate's wrists and the handcuffs would occur on the wrists adjacent to the thumbs, and remote from the inmate's pinky fingers.

We recognize that Martinez has testified that he experienced pain when a correctional officer's palm brushed against his right pinky finger while applying these handcuffs. While we credit this testimony to some degree,[1] we believe that Martinez's

---

[1] We credit Martinez's testimony that he may have experienced pain in his right pinky finger, but as we have noted there is an element of implausibility to Martinez's testimony that this discomfort was caused by a blow from the palm of a correctional officer's hand since Martinez would not have been able to observe any action taking place behind his back while he was being handcuffed.

testimony confuses sensation with causation. We have no doubt that incidental contact by correctional staff with Martinez's broken finger may have been painful. However, it is also clear that this incidental contact was not the cause of Martinez's discomfort. Rather, the clear and convincing evidence shows that the proximate cause of this injury, a boxer's fracture, was Martinez's decisions to strike multiple blows to the head, neck and torso of a fellow inmate on March 7, 2012. Given this proof, Martinez has not shown a causal connection between the conduct of prison staff and the plaintiff's resulting injury. Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

Finally, given the paucity of proof presented by Martinez relating to causation or breach of duty by any correctional defendant, we find that Martinez has also failed to carry his burden of proof on the final element of a negligence claim under Pennsylvania law. Martinez simply has not demonstrated any actual damages suffered by the plaintiff caused by a breach of duty by the defendant. Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

In sum, the evidence in this case does not present proof of culpable negligence by the United States, since Martinez has not established a breach of duty, causation or resulting damages attributed to any negligence. Instead, this evidence reveals in a clear and convincing fashion that the cause of Martinez's injuries was his own volitional act, his decision to indulge in a violent affray with a fellow prisoner on March 7, 2012.

Since this volitional choice on Martinez's part does not give rise to any form of tort liability, Martinez's negligence claim fails and judgment will be entered in favor of the defendant in this case.

An appropriate form of order follows.

Submitted this 11th day of December, 2015.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge